UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ENCORE WIRE CORPORATION | § | |
| | § | |
| v. | § | CIVIL NO. 4:22-CV-232-SDJ |
| | § | |
| COPPERWELD BIMETALLICS, LLC | § | |

**MEMORANDUM OPINION & ORDER**

This declaratory action centers on whether Plaintiff/Counter-Defendant Encore Wire Corporation ("Encore") aired a podcast that included false and misleading statements about products manufactured by Defendant/Counter-Plaintiff Copperweld Bimetallics, LLC ("Copperweld"), in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or Texas law. Now before the Court is Encore's Motion for Leave to File First Amended Complaint, (Dkt. #14). Encore seeks leave to file an amended complaint adding another declaratory claim concerning a potential violation of antitrust law by Encore, acting in concert with other entities, against Copperweld.

For the reasons explained below, the motion will be denied.

**I. BACKGROUND**

**A. Encore seeks declaratory relief concerning alleged false and misleading statements about Copperweld products.**

Encore and Copperweld are competitors in the electrical building wire industry. Encore describes itself as a leading manufacturer of copper and aluminum residential, commercial, and industrial building wire. Copperweld manufactures an alternative wiring product, copper-clad aluminum ("CCA"). After two Encore

1

employees aired a podcast in February 2022 that discussed CCA products, Copperweld sent a cease-and-desist letter to Encore asserting that the podcast and related promotional materials included deceptive, false, and misleading statements about CCA. Copperweld demanded that the podcast be removed from all websites and threatened legal action against Encore. In response, on March 24, 2022, Encore filed the instant action seeking declarations that the podcast did not violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), nor did it violate Texas state law.

Thereafter, on July 11, 2022, Copperweld filed its answer and counterclaims against Encore. Mirroring Encore's complaint, Copperweld asserted in its counterclaims that Encore's podcast and related promotional materials violated the Lanham Act. Copperweld also asserted a counterclaim that Encore engaged in common law unfair competition by interfering with a Copperweld electrical wiring project in Celina, Texas, that involved a CCA product.

**B. In separate litigation pending in the Northern District of Alabama, Copperweld brings an antitrust claim against Encore.**

Before Encore initiated the instant declaratory action against Copperweld, separate litigation had been filed by Copperweld in the Northern District of Alabama against another competitor in the electrical building wire industry, Cerro Wire, LLC ("Cerro"). In that action, filed on September 30, 2021, Copperweld asserted a claim against Cerro for false advertising under the Lanham Act and related claims concerning Cerro's alleged false statements regarding CCA. *See Copperweld Bimetallics, LLC v. Cerro Wire, et. al*, No. 5:21-CV-1310 (N.D. Ala.) (hereafter referenced as the "Alabama action").

After Encore filed its declaratory action in this Court, for several months both the instant action and the Alabama action proceeded on claims of similar alleged misconduct by Copperweld's competitors, namely, that Cerro and Encore had engaged in specific acts of false and misleading advertising and otherwise interfered with specific Copperweld projects.

In August 2022, the Northern District of Alabama granted Copperweld leave to amend its complaint to assert antitrust claims not only against Cerro, but also against Encore. (Dkt. #20-1 ¶¶ 4, 7). Copperweld's core antitrust allegation is that three of its competitors, Encore, Cerro, and Southwire Company, LLC ("Southwire"),[1] unlawfully conspired to block Copperweld's 14-gauge CCA from being added to the 2023 version of the National Electrical Code ("NEC"). The NEC, a model code promulgated by the National Fire Protection Association ("NFPA"), establishes minimum safety standards for electrical systems. According to Copperweld, Encore, Cerro, and Southwire engaged in overt acts to further their alleged antitrust conspiracy, particularly by conducting "sham tests" demonstrating CCA's unreliability, submitting these tests to the NEC's decisionmakers, and submitting false comments to the NEC's decisionmakers regarding CCA's safety.

---

[1] Southwire, also a named party in the Alabama action, has filed its own lawsuit against Copperweld in the Northern District of Georgia seeking a declaratory judgment that it did not participate in the alleged antitrust conspiracy. (Dkt. #20-1 ¶ 7); (Dkt. #29-2 at 19–20).

## C. Encore seeks leave to amend its complaint to add a declaratory claim concerning the antitrust issue pending in the Northern District of Alabama.

Because context matters, it is helpful to track the timeline surrounding the filing of Encore's motion for leave to submit an amended declaratory complaint in this Court in relation to the proceedings in the Alabama action. On July 15, 2022, Copperweld and Cerro jointly moved for leave to file amended or supplemental pleadings in the Alabama action, and thereafter, on August 10, 2022, within the timeframe contemplated by the parties' joint motion, Copperweld submitted its proposed Second Amended Complaint in the Alabama action. Copperweld's Second Amended Complaint in the Alabama action added claims against Cerro, Encore, and Southwire for conspiracy to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

Shortly after filing its proposed Second Amended Complaint in the Alabama action, Copperweld sent Encore a courtesy copy of the pleading and offered to discuss it with Encore and attempt to reach an early resolution. The next day, however, Encore instead requested a meet and confer with Copperweld concerning the instant action, asserting that Encore intended to seek leave of this Court to file its own amended complaint to add a claim for declaratory judgment that Encore had not engaged in restraint of trade in violation of the Sherman Act. Copperweld advised Encore that it considered Encore's proposed amendment to be inappropriate given Copperweld's pending motion to assert antitrust claims against Encore in the Alabama action but agreed to meet and confer with Encore the next day, August 12, 2022. Encore apparently agreed and sent a calendar invite for the parties to confer

4

on August 12. But Encore then filed its motion for leave to file its amended complaint on August 11, without waiting to complete the meet and confer with Copperweld. On August 22, 2022, the federal court in Alabama granted Copperweld leave to file its Second Amended Complaint in the Alabama action. The federal court in Alabama was aware of Encore's pending motion to amend its complaint in the instant case.

Encore's additional declaratory judgment claim seeks judicial affirmation that Encore is not liable for the antitrust conspiracy alleged in the Alabama action. (Dkt. #15 ¶¶ 53–57). Encore also seeks leave to supplement the record with discovery requests from the Alabama action as evidence that the two cases substantially overlap.[2] (Dkt. #30, #35). Copperweld opposes these motions. (Dkt. #20, #29, #32, #36). Copperweld also maintains that Encore has engaged in sanctionable conduct and seeks recovery of its attorney's fees incurred in responding to Encore's motions. (Dkt. #20 at 13–15).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15, the Court grants leave to amend pleadings "freely . . . when justice so requires." FED. R. CIV. P. 15(a)(2). While that standard is generous, it is not automatic. *Guijarro v. Enter. Holdings, Inc.*, 39 F.4th 309, 315 (5th Cir. 2022); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). The Court will deny leave to amend, for example, when an amendment is sought in bad faith, would cause undue delay, or would be futile. *Wimm*, 3 F.3d at 139.

---

[2] Encore has also filed motions in the Northern District of Alabama seeking a dismissal, stay, or transfer of that action on various grounds, including the first-to-file rule and lack of personal jurisdiction. (Dkt. #44).

### III. DISCUSSION

Encore's motion to amend its complaint fails for two reasons. First, Encore submitted the motion in violation of this Court's local rules. For this reason alone, it will be denied. Second, because the antitrust issue raised by Encore's proposed amended complaint is already pending in the Northern District of Alabama, the Court will follow the first-to-file doctrine and not allow the amendment.

**A. Encore filed its motion in violation of the Local Rules.**

As the Fifth Circuit has long recognized, "[l]ocal rules for the conduct of trial courts are desirable and necessary, and such rules should not be ignored or declared invalid except for impelling reasons." *Hunt v. Texas Mut. Ins. Co.*, 54 F.App'x 799, 2002 WL 31845832, at *1 (5th Cir. 2002) (per curiam) (quoting *Wirtz v. Hooper-Holmes Bureau, Inc.*, 327 F.2d 939, 943 (5th Cir. 1964)). Consistent with this principle, the Eastern District of Texas's Local Rules are not optional, nor are they mere "suggestions" with no practical force. This includes the "meet and confer" requirement of Local Rule CV-7(h).

As relevant here, Local Rule CV-7(h) requires that, for opposed motions, "at a minimum," there must be "a personal conference, by telephone or in person, between an attorney for the movant and an attorney for the non-movant." Local Rule CV-7(h) further provides that, during the contemplated "personal conference," the participants "must give each other the opportunity to express his or her views concerning the disputes," and the participants must also "compare views and have a discussion in an attempt to resolve their differing views before coming to court." The rule is clear on two additional points: (1) "correspondence, e-mails, and facsimile

6

transmissions do not constitute compliance with the substantive component and are not evidence of good faith;" and (2) "a request for court intervention is not appropriate until the participants have met and conferred, in good faith, and concluded, in good faith, that the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve."

Put simply, Local Rule CV-7(h) requires the meaningful engagement of opposing counsel before opposed motions are filed. The "meet and confer" between counsel is not merely "a perfunctory obligation." *Morrison v. Walker*, No. 1:13-CV-327, 2014 WL 11512240, at *2 (E.D. Tex. Dec. 2, 2014). And with good reason. The rule serves an important purpose, ensuring that "the court does not waste its resources deciding motions where, if the parties had thoroughly discussed the matter, a resolution could have been reached." *Id.*

Here, it is undisputed that, before submitting its motion to amend its complaint, Encore was advised that Copperweld opposed the motion. And, at the outset, Encore complied with Local Rule CV-7(h) by initiating a meet and confer process, notifying Copperweld of its intention to file the motion and scheduling a conference call with Copperweld to discuss the motion on August 12. But Encore then deliberately derailed the meet and confer process by filing its motion for leave to amend on August 11, *before* the scheduled meet and confer. In so doing, Encore violated Local Rule CV-7(h), rendering moot any meet and confer process concerning its motion to amend. For this reason alone, and because Encore has offered no

legitimate or persuasive reason for its violation of Local Rule CV-7(h)'s meet and confer requirement, the motion will be denied.

## B. Encore's motion also fails under the "first-to-file" rule.

### i. The first-to-file rule requires courts to avoid interference with each other's affairs.

Encore's motion for leave to file its amended complaint also fails under the "first-to-file" rule. The first-to-file rule allows a federal court to refuse to hear newly filed claims when the same claims, or substantially overlapping claims, are already pending in another federal court. *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 541 n.3 (5th Cir. 2022) (per curiam); *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677–78 (5th Cir. 2011).

The first-to-file rule is a discretionary doctrine resting on "principles of comity and sound judicial administration." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999); *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). It has long been recognized that "the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *Syntek*, 121 F.3d at 950 (quoting *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *W. Gulf Maritime Ass'n*, 751 F.2d at 729. As applied, the first-to-file rule is "forward-looking," seeking to preserve judicial resources and avoid inconsistent results by ensuring that "substantially

8

overlap[ping]" issues are decided in the same federal forum. *Cadle Co.*, 174 F.3d at 603–04.

Application of the first-to-file rule does not require that the cases at issue be identical or that all of the same parties be involved in both actions. *Syntek*, 121 F.3d at 950–51. Instead, to decide whether substantial overlap exists, courts have looked at factors such as whether the core issue in each case is the same or if much of the proof adduced would likely be identical. *Sweet Little Mexico*, 665 F.3d at 678 (citing *W. Gulf Maritime Ass'n*, 751 F.2d at 729; *Mann Mfg., Inc. v. Hortex Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)). When the overlap between claims is less than complete, courts consider several additional factors, including the extent of the overlap, the likelihood of conflict, and the "comparative advantage and interest of each forum in resolving the dispute." *Id.* (quotations omitted). These additional factors are applied on a "case by case" basis. *Id.* (quotations omitted).

### ii. The first-to-file rule applies to Encore's proposed amended complaint.

Encore's proposed amended complaint triggers the first-to-file rule because it advances an antitrust declaratory claim that mirrors the antitrust claims pending in the Alabama action. Encore seeks a declaration from this Court refuting Copperweld's allegations in the Alabama action that Encore, together with its alleged co-conspirators Cerro and Southwire, unlawfully conspired to block Copperweld's 14-gauge CCA from being added to the 2023 version of the NEC. *Compare* (Dkt. #15 ¶¶ 53–57), *with* (Dkt. #20-5 ¶¶ 1–2, 80–98, 145–51). Because the antitrust issue in both cases is essentially identical, the Court anticipates that the same or much of the

9

same proof would be introduced in both the Alabama action and this case to either support or refute Copperweld's restraint-of-trade theory. Under similar circumstances, courts have applied the first-to file rule. *See, e.g.*, *Burger v. Military Sea Lift Command*, 189 F.3d 467, 1999 WL 511534, at *2 (5th Cir. 1999) (unpublished, per curiam) (holding that the first-to-file rule applied to identical improper discharge claims filed in separate federal courts); *Benavides v. Home Depot USA, Inc.*, No. H-06-0029, 2006 WL 1406722, at *2 (S.D. Tex. May 19, 2006) ("In this case, [the plaintiff's] claims do not merely overlap with the . . . claims pending in [the] New Jersey [District Court]; they are identical.").[3] For these reasons, the Court must conclude that Encore's proposed antitrust declaratory claim runs afoul of the first-to-file rule and the motion for leave to amend should be denied.

### iii. Encore's arguments are unavailing.

Encore does not deny that the first-to-file rule applies to the antitrust declaratory claim asserted in its proposed amended complaint. Instead, Encore contends that, in evaluating which action was filed first, the Court should look past the antitrust claims filed in the Alabama action (in August 2022) to the false advertising declaratory claim previously filed in the instant action (in March 2022). Encore's reasoning runs as follows: (1) the issues in this declaratory action substantially overlap with those presented in the antitrust claim made by

---

[3] The fact that Cerro and Southwire are not parties in the instant action does not alter the result here. The same evidence, or lack thereof, of the existence of the conspiracy alleged by Copperweld, and any associated overt acts by Encore and the other companies, would form the core proof at issue in both the Alabama action and this action if Encore's amended complaint were allowed.

10

Copperweld in the Alabama action; and (2) because the issues in both cases substantially overlap, this Court is the "first filed" court for the purpose of resolving the antitrust claim pending in the Alabama action and raised in Encore's proposed amended complaint. In support of its position that the issues presented in both cases substantially overlap, Encore asserts that both cases raise similar factual questions regarding CCA's safety and testing, its value compared to copper, and its susceptibility to theft. Encore's argument fails for two reasons.

First, Encore's false advertising declaratory claim pending in this Court (and for that matter, Copperweld's Lanham Act and unfair competition counterclaims) do not substantially overlap with the antitrust claims pending in the Alabama action. Claims do not substantially overlap when they are "merely related." *Truinject Corp. v. Nestlé S.A.*, No. 4:20-CV-457, 2020 WL 6781578, at *2 (E.D. Tex. Nov. 18, 2020) (quotations omitted); *L-3 Commc'n Integrated Sys., L.P. v. Lockheed Martin Corp.*, No. 3:07-CV-0341-B, 2008 WL 89659, at *2 (N.D. Tex. Jan. 8, 2008) (quotations omitted). In the *L-3* case, for example, the court refused to apply the first-to-file rule to antitrust and tortious interference claims that were "broader in scope" than claims pending in another federal lawsuit. 2008 WL 89659, at *2. Although the claims raised some overlapping factual questions and would require producing at least some of the same evidence, the risk of duplicative discovery could be avoided by tailoring the scope of discovery in the new action. *Id.* at *1–3. The risk of duplicative discovery was reduced further by the significant discovery that had already been completed in the earlier-filed case. *Id.* at *2–3.

The claims currently pending before this Court and the antitrust claims filed by Copperweld in the Alabama action involve at least two distinct chains of events. The first chain of events, at issue in the instant action and initially raised by Encore's declaratory claim and then by Copperweld's counterclaim under the Lanham Act, concerns Encore's alleged false statements about CCA in a podcast episode and through related promotional materials. (Dkt. #1 ¶ 11); (Dkt. # 1-1 at 2–3, 6–9). The second chain of events, raised in Copperweld's live complaint in the Alabama action and in Encore's proposed amended complaint in the instant action, concerns Encore's alleged participation in a conspiracy with two other industry players, Cerro and Southwire, to block CCA's addition to a model electrical code by submitting sham tests and false comments to the code's decisionmakers. (Dkt. #20-5 ¶¶ 80–98).[4]

At a high level of generality, Encore is correct that these chains of events raise some overlapping factual questions, including CCA's safety and testing, its value compared to copper, and its susceptibility to theft. (Dkt. #23 at 3–7). But the overlap between these events is not substantial and there is no reason to conclude that they must be litigated in the same forum. The antitrust claims pending in the Alabama action are significantly broader in scope than the false advertising and unfair competition claims pending before this Court. Where the former arise from an alleged sweeping conspiracy among competitors in the building wiring industry, the latter

---

[4] A third chain of events is raised in the instant action by Copperweld's counterclaim that Encore engaged in unfair competition when it allegedly interfered with a specific Copperweld project in Celina, Texas. This alleged misconduct also has no direct relationship with Copperweld's antitrust claim against Encore, Cerro, and Southwire in the Alabama action.

arise from a handful of discreet statements made in a podcast and Encore's alleged interference with a particular Copperweld project in Texas.[5] The antitrust claims made in the Alabama action also present different core substantive issues from those presented in the false advertising and unfair competition claims before this Court—most notably, the existence of an antitrust conspiracy among Encore, Cerro, and Southwire. And because the antitrust claims and false advertising claims arise from distinct conduct—representations to customers on the one hand compared against submissions to a model code's decisionmakers on the other—the factual overlap will be limited to ancillary issues, not the core issues.[6]

---

[5] Encore has moved to supplement the record with certain discovery requests propounded in this case by Copperweld. That motion will be granted because the evidence is relevant to the issues before the Court and will not prejudice Copperweld. *See, e.g.*, *Rockstar Consortium US LP v. Google Inc.*, No. 2:13-CV-893-JRG-RSP, 2014 WL 4748692, at *8 (E.D. Tex. Sept. 23, 2014) (granting leave to supplement a transfer motion with newly acquired evidence when the evidence was relevant to the issues presented in the motion); *Isbell v. DM Records, Inc.*, No. 4:07-CV-146, 2012 WL 369246, at *2 (E.D. Tex. Feb. 3, 2012) (granting leave to supplement a summary judgment motion with a "newly-discovered document" when the document was material to the claims at issue and its admission would not prejudice the opposing party).

The discovery requests Encore points to do not show that the issues already pending before this Court substantially overlap with the antitrust claims pending in the Alabama action. The fact that certain of Copperweld's discovery requests in the instant action, which may themselves be objectionable, concern issues related to the antitrust claims in the Alabama action does not mean that the core *proof* regarding the claims at issue in this case substantially overlaps with the Alabama action. As explained herein, claims that are "merely related" do not substantially overlap. *Truinject*, 2020 WL 6781578, at *2.

[6] Similarly, the Court finds that Encore's proposed amended complaint would not "relate back" to the filing of the original complaint because the claims do not arise from the same "conduct, transaction, or occurrence." FED. R. CIV. P. 15(c)(1)(B). The relation back doctrine applies only when multiple claims arise from a "specific factual situation." *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 342 (5th Cir. 2005) (quotations omitted). Here, because the false advertising and antitrust claims arise from different factual situations—and only implicate common ancillary issues—that doctrine does not support a finding that Encore's proposed amended complaint enjoys first-filed priority. *See Robertson v. Sun Life*

13

Second, Encore's theory of substantial overlap also turns on the proposition that Copperweld's March 2022 cease-and-desist letter concerning Encore's podcast, which prompted Encore to file its declaratory claim in this Court, was merely a "stalking horse" for its antitrust claim ultimately filed nearly six months later in the Alabama action. (Dkt. #14 at 8). But this theory proves too much. Even accepting Encore's premise that Copperweld was somehow using discreet false advertising and related claims as the prelude for factually distinct antitrust claims against Encore and its alleged co-conspirators, any such prelude to Copperweld's antitrust claim began in the Alabama action in September 2021 when Copperweld filed its false advertising and related claims against Encore's purported co-conspirator Cerro. (Dkt. #20-1 ¶ 2). This occurred six months before Copperweld's cease-and-desist letter concerning Encore's podcast and the subsequent filing of the instant declaratory action by Encore. Notably, Copperweld's false advertising claim filed against Cerro in September 2021 raises the same issues that, according to Encore, support trying the various antitrust and false advertising claims in the same court: namely, CCA's value, safety, and susceptibility to theft. *See* (Dkt. #20-5 ¶¶ 99–108).

In sum, even if the Court accepted Encore's "stalking horse" theory and agreed that Copperweld's antitrust claims substantially overlap with Encore's false advertising claim, that same reasoning inexorably leads to the conclusion that Copperweld's antitrust claims substantially overlap with *both* Encore's false advertising declaratory claim *and* the similar false advertising claim that was first

---

*Fin.*, No. CV 17-2148, 2017 WL 4226205, at *3–4 (E.D. La. Sept. 22, 2017) (collecting cases refusing to apply the relation back doctrine to claims arising from distinct factual scenarios).

made against Encore's co-conspirator Cerro in the Alabama action. The result is the same—the Northern District of Alabama remains the "first filed" court.[7]

\* \* \*

Our sister court in the Northern District of Alabama granted leave for Copperweld to file an amended complaint asserting antitrust claims against Encore and two alleged co-conspirator companies. Encore's attempt to raise the same antitrust issues in this Court through a proposed amended complaint threatens to undermine the principles of comity and judicial economy underlying the first-to-file rule. *W. Gulf Maritime Ass'n*, 751 F.2d at 728 (recognizing that the first-to-file rule requires the federal courts "to exercise care to avoid interference with each other's affairs"). For this additional reason, Encore's motion will be denied.[8]

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff/Counter-Defendant Encore's Motion for Leave to File First Amended Complaint, (Dkt. #14).

The Court **GRANTS** Encore's Motion for Leave to Supplement the Record in Connection with Its Motion for Leave to File First Amended Complaint, (Dkt. #30).

---

[7] The fact that Encore was not an original party to the claims against Cerro does not impact the analysis. The first-to-file rule requires neither identical claims nor "[c]omplete identity of the parties." *Syntek*, 121 F.3d at 951; *On Semiconductor Corp. v. Samsung Elecs. Co., Ltd.*, No. 6:06-CV-523, 2007 WL 9697790, at *1 (E.D. Tex. June 21, 2007). Instead, the rule focuses on whether the issues presented in each case substantially overlap. *Cadle Co.*, 174 F.3d at 603.

[8] At oral argument, Encore also asserted in passing that the Northern District of Alabama may lack personal jurisdiction for Copperweld's antitrust claims against Encore. (Dkt. #29-2 at 54). That is an issue appropriately resolved in the Northern District of Alabama, as the "first-filed" court, as opposed to this Court. *Truinject*, 2020 WL 6781578, at *3 ("Except in rare instances, the first-filed court should make decisions regarding substantially overlapping lawsuits, including issues of jurisdiction and venue").

Defendant/Counter-Plaintiff Copperweld's request for sanctions will be decided by separate order.

**So ORDERED and SIGNED this 6th day of January, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE